UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY LEE SLOAN, JR.,<br><br>        Plaintiff,<br><br>   v.<br><br>T. CISNEROS, et al.,<br><br>        Defendants. | Case No. 1:21-cv-01477-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S EIGHTH AMENDMENT CLAIMS AGAINST DEFENDANTS TALLEY, MATA, AND GONZALES FOR DELIBERATE INDIFFERENCE TO HIS SERIOUS MEDICAL NEEDS, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED<br><br>(ECF No. 22)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

Johnny Lee Sloan, Jr. ("Plaintiff"), is a state prisoner proceeding *pro se* with this action. Plaintiff filed the complaint commencing this action on October 4, 2021.  (ECF No. 1).

On February 3, 2022, the Court screened Plaintiff's complaint.  (ECF No. 17).  The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint that is **no longer than twenty pages**; or b. Notify the Court in writing that he does not want to file an amended complaint and instead wants to proceed only on his Eighth Amendment claim against defendant Talley and defendant Mata for deliberate indifference to his serious medical needs; or c. Notify the Court in writing that he wants to stand on his complaint."  (Id. at 22).  On May 10, 2022,

1

Plaintiff filed a First Amended Complaint, which is now before this Court for screening.  (ECF No. 22).

The Court has reviewed the First Amended Complaint.  Plaintiff alleges that certain defendants repeatedly refused to honor a California Department of Corrections and Rehabilitation Americans With Disabilities Reasonable Accommodation Request and healthcare appeal by not issuing a new wheelchair.  Plaintiff also once again brings numerous unrelated claims.

For the reasons described below, will recommend that this action proceed on Plaintiff's Eighth Amendment claims against defendants Talley, Mata, and Gonzales for deliberate indifference to his serious medical needs.  The Court will also recommend that all other claims and defendants be dismissed.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I.      SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts

"are not required to indulge unwarranted inferences." <u>Doe I v. Wal-Mart Stores, Inc.</u>, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  <u>Iqbal</u>, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers."  <u>Hebbe v. Pliler</u>, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after <u>Iqbal</u>).

## II.      SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

At times, Plaintiff's complaint is difficult to understand.  What follows is the Court's best understanding of Plaintiff's factual allegations.

Plaintiff lists eleven claims.

### A.  <u>Plaintiff's First Claim</u>

Plaintiff's first claim is for deliberate indifference in violation of the Eighth Amendment, retaliation in violation of the First Amendment, and for violation of his Fourteenth Amendment due process rights.

Defendants K. Talley, L. Gonzales, and A. Mata violated Plaintiff's Eighth Amendment rights when they refused to honor a California Department of Corrections and Rehabilitation ("CDCR") Americans With Disabilities Reasonable Accommodation Request (CDCR 1824) and CDCR healthcare appeal by not issuing a new wheelchair.

Defendants G. Martinez, G. Gibson, D. Rhoads, C. Ramos, J. Metts, and R. Martinez violated Plaintiff's rights guaranteed by the First and Fourteenth Amendments to be free from retaliation for exercising his right to file grievances and complaints.

On September 17, 2020, Plaintiff was returning to his assigned cell.  The replacement loaner wheelchair broke at the frame, as almost each loaner had done, or was in need of immediate maintenance after issuing.  Defendant Talley, a Licensed Vocational Nurse, was working that evening and again attempted to issue Plaintiff another inappropriate wheelchair, which Plaintiff refused to accept.  The refusal was due to prior encounters where defendant Talley told Plaintiff, "You get what I give you!"  She disregarded the CDCR 1824 appeal that was granted, which stated in part, "Healthcare Services reported a new w/c has been ordered for

you," consistent with the Substance Abuse Treatment Facility wheelchair repair form that was signed by defendant Talley.  However, Plaintiff has not received a new wheelchair.

Defendant Talley had defendant Gonzales (a Licensed Vocational Nurse) come to the yard, and defendant Gonzales was acting as if she was a supervisor.  She conducted an interview with Plaintiff after talking with defendant Talley.  Plaintiff provided defendant Gonzales the CDCR 1824.  She then went to speak with defendant Talley, and then came back to Plaintiff.  She told Plaintiff that she told defendant Talley to order the new wheelchair.  However, Plaintiff continued only being issued loaners.  At the time, the total was six.  When Plaintiff did not receive the new wheelchair Plaintiff forwarded two CDCR Request for Interview forms to defendant Gonzales, but he did not receive a reply.

Defendant Talley also unethically and without consent forwarded an Inmate Trust Account Withdrawal slip, which was not signed by Plaintiff, to accounting, and funds were deducted unlawfully from his account.  Plaintiff filed a 602 staff complaint against defendant Talley.  After this, defendant Talley was replaced at the Durable Medical Equipment with defendant Mata, a Medical Assistant.  However, she still dictated to "them" in wrongdoing.  Eppler, a Medical Assistant, was deemed in violation of CDCR policy, only she immediately removed herself and was replaced with defendant Mata, who participated in the wrongdoing orchestrated by defendant Talley.

Plaintiff assisted inmate Sutton with the exact same CDCR 1824 appeal.  Inmate Sutton was also a disabled permanent wheelchair user whose wheelchairs also broke at the frame.  He was issued a new wheelchair, which Plaintiff saw.  On March 8, 2021, Plaintiff submitted a CDCR 1824 for discrimination.  Plaintiff has not yet received a response to his appeal.  However, on May 4, 2021, defendant Ramos, an Appeals Coordinator, called Plaintiff to the program office.  Out of nowhere, defendant Ramos drafted a CDCR 1824 regarding Plaintiff's wheelchair.  Plaintiff showed defendant Ramos the bruises on both forearms sustained from the oversized wheelchair intentionally issued by defendant Talley.  The CDCR 1824 drafted by defendant Ramos stated in part, "Your request was forwarded to Healthcare services for input.  A new w/c was ordered.  The w/c will be delivered once received from the warehouse."  To the

4

present, no wheelchair has been issued, and the wheelchair issues continue.

On the evening of September 17, 2020, Plaintiff received a medical ducat for an unrelated issue.  His appointment was scheduled for September 18, 2020.  At his appointment, defendant Talley took his vitals.  Plaintiff asked her if she told defendant Mata about the previous evening and about the wheelchair.  She had not, but she did so after Plaintiff said something to her.  Defendant Mata informed Plaintiff she would put in the order.  Plaintiff again patiently waited for the wheelchair, but he was never called.  After a week had passed Plaintiff asked about it, and defendant Mata told him that no wheelchair was sent.  The same thing occurred the following week.

On October 9, 2020, Plaintiff was ducated to medical for hypertension issues.  As defendant Mata took his vitals, Plaintiff asked about the wheelchair.  Defendant Mata stated that she did not want to discuss it, and that she was taking his vitals.  She then informed Plaintiff that she needed his weight, so he needed to transfer out of the wheelchair so it could be weighed.  With the help of the caregiver, Plaintiff complied.

As Plaintiff waited in the holding area, he noticed that defendant Talley went into the rear of the building, where defendant Metts was (defendant Metts is a doctor).  Plaintiff was called to be seen.  As Plaintiff spoke with the doctor, changes were being made to his medications.  The telephone rang.  Based on the conversation, as it was about the medication change, it was apparent that defendant Talley had the phone in defendant Metts' office on speaker and was listening in on Plaintiff's entire medical visit, violating doctor/patient confidentiality.  Plaintiff believes that defendant Metts was aware of this violation.

Once the appointment concluded, Plaintiff asked defendant Mata if she could provide him with the status of his wheelchair, which was allegedly ordered on September 18.  Defendant Mata refused to answer and said that Plaintiff had disrespected her.  She told defendants Emerson and John Doe, both of whom are correctional officers, that she was done with Plaintiff and asked Plaintiff to leave the clinic, but not before Plaintiff asked defendant Mata when he had disrespected her.  She again refused to reply, due to the fact that Plaintiff never caused any disruption or disrespected anyone.

5

The same evening, Plaintiff submitted a 602 staff complaint regarding defendant Mata's unethical behavior and refusal to answer his questions regarding the wheelchair.

Two weeks later, Plaintiff was issued an administrative Rules Violation Report for Disrespect without Potential for Violence/Disruption, which was drafted by defendant G. Martinez, a Licensed Vocational Nurse.  It included a fabrication of the events that occurred on October 9.  Less than two weeks later, defendant R. Martinez, a Sergeant, called Plaintiff to the "P/O."  After reading the full Rules Violation Report, he asked Plaintiff how he pled.  Plaintiff replied, "Not Guilty."  Plaintiff said four other words and was then immediately shut down by defendant R. Martinez.  Defendant R. Martinez told Plaintiff he was finding Plaintiff guilty, without discussion.

Plaintiff's staff complaint was never acknowledged by the Appeals Coordinator until December 15, 2020, which is inconsistent with policy.  Additionally, it was only addressed after Plaintiff attached a copy of the complaint to another 602 staff complaint submitted on another employee from medical.  On December 16, 2020, Plaintiff received a Form 22 from defendant Rhoads, an Appeals Coordinator.  It stated, "I wanted to let you know that your grievance you submitted in October was accepted as a staff complaint and is due to close on December 18, 2020.  Just received your new grievance and it is being processed."  Plaintiff alleges that the failure to properly process his grievance violated his Fourteenth Amendment due process rights.

### B.  Plaintiff's Second Claim

Plaintiff's second claim is for Retaliation and defamation in violation of the First Amendment.

Plaintiff's claim largely revolves around allegations that defendant Mueller, a Licensed Vocational Nurse, falsely claimed that Plaintiff masturbated in front of her.  Plaintiff was issued two Rules Violation Reports in retaliation, and he was referred to Mental Health for assessment.  Plaintiff also complains about the process he received at the hearings for each Rules Violation Report.  Plaintiff also alleges that on one occasion defendant Mueller failed to give him his pain and blood pressure medications.

### C.   Plaintiff's Third Claim

Plaintiff's third claim is for failure to protect in violation of the Eighth Amendment.

Plaintiff alleges that on February 26, 2021, he was escorted to the gymnasium by defendant Figueroa, a Correctional Officer, who hit his alarm as a retaliatory measure because Plaintiff previously submitted a grievance against him.  Plaintiff was then set up by prison staff to be assaulted by inmates, and he was assaulted.  Plaintiff later learned he was assaulted due to the fabricated charge made by defendant Mueller.

### D.   Plaintiff's Fourth Claim

Plaintiff's fourth claim is for violation of his Fourteenth Amendment due process rights. Plaintiff alleges that certain defendants violated his rights when they approved and/or heard the allegations fabricated by defendant Mueller.  The introduction of fabricated and false evidence violates Plaintiff's due process rights.

### E.   Plaintiff's Fifth Claim

Plaintiff's fifth claim is for "malicious misclassification" in violation of the Fourteenth Amendment.  Plaintiff alleges that defendants Cisneros, Iverson, Jane Doe, Cano, Mendoza, Avila, and Evans maliciously and sadistically conspired to, and carried out, continuing acts of calculated harassment.

### F.   Plaintiff's Sixth Claim

Plaintiff's sixth claim is for "calculated harassment" in violation of the Eighth Amendment.  Plaintiff alleges that all defendants participated in a conspiracy to violate Plaintiff's Eighth Amendment rights when they carried out ongoing and continuing acts of calculated harassment.

### G.   Plaintiff's Claims Seven Through Eleven

In claims seven, eight, nine, ten, and eleven Plaintiff alleges violation of state law.

## III.   ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

### A.   Section 1983

The Civil Rights Act under which this action was filed provides:

Every person who, under color of any statute, ordinance, regulation, custom, or

7

usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-77.  In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S.

8

658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged.  Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others."  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

### B.  Federal Rules of Civil Procedure 18 and 20

A complaint must comply with the requirements of Federal Rules of Civil Procedure 18 and 20.  Under these rules, a plaintiff may not proceed on a myriad of unrelated claims against different defendants in a single action.  Fed. R. Civ. P. 18(a), 20(a)(2).  "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.'  Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated

claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." K'napp v. California Dept. of Corrections, 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013) (alterations in original) (quoting George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007), aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation, 599 Fed. App'x. 791 (9th Cir. 2015); see also Fed. R. Civ. P. 20(a)(2) ("Persons … may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."); Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997) ("[T]he 'same transaction' requirement[] refers to similarity in the factual background of a claim.").

"Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party." Washington v. Fresno County Sheriff, 2014 WL 641137, at *2 (E.D. Cal., Feb. 18, 2014); Williams v. Madera Police Dep't, 2012 WL 3068944, at *3 (E.D. Cal., July 26, 2012) (same); Miller v. Kernan, 2017 WL 590259, at *3 (E.D. Cal., Feb. 14, 2017) (same); Solomon v. Carrasco, 2012 WL 3744666, at *3 (E.D. Cal., Aug. 28, 2012) (same)

Plaintiff's complaint once again violates Rules 18 and 20.  In claim one, Plaintiff appears to bring several different claims.  Plaintiff complains about what occurred during medical appointments and about not getting a new wheelchair, as well as about a write-up he received based on what occurred at one of those medical appointments.  These allegations also involve at least one of the same defendants.  Accordingly, the claims in claim one are arguably related.

However, Plaintiff's other federal claims have no relationship to the claims in claim one.  Claim two concerns allegations that defendant Mueller falsely claimed that Plaintiff was

10

masturbating.  Claim three concerns allegations that certain prison officials set him up to be attacked.  In claim four Plaintiff alleges violations of his due process rights in the handling of the Rules Violation Reports issued by defendant Mueller.  In claim five Plaintiff alleges that defendants Cisneros, Iverson, Jane Doe, Cano, Mendoza, Avila, and Evans conspired to violate Plaintiff's Fourteenth Amendment rights when they maliciously and sadistically conspired to, and carried out, continuing acts of calculated harassment.  Therefore, the Court finds that claims two, three, four, and five involve different transactions and different defendants than claim one.[1]

Nor may Plaintiff connect his otherwise unrelated claims by suing appeals coordinators based on improper processing of his appeals.  Plaintiff does not sufficiently allege that any appeals coordinator retaliated against Plaintiff because he engaged in protected conduct, and as discussed below, and Plaintiff does not have a due process right in the processing of his appeals.

Nor may Plaintiff connect his otherwise unrelated claims by alleging a conspiracy in claim six.  His allegations regarding a conspiracy between the defendants named in claim one and the defendants named in the remainder of his claims are vague and conclusory.[2]

As the remainder of Plaintiff's federal claims are not related to his first federal claim, the Court will recommend that the unrelated federal claims be dismissed without prejudice.

---

[1] The Court notes that several defendants from this claim and from his first claim overlap, such as defendants Gibson, Rhoads, Ramos, and R. Martinez.  However, his allegation regarding the involvement of these defendants in claim four is conclusory.  Moreover, as discussed in these findings and recommendations, Plaintiff fails to state a claim against any of these defendants based on the allegations in claim one.  Thus, the allegation regarding the involvement of these defendants in claim four is insufficient to connect Plaintiff's otherwise unrelated claims.

[2] To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an agreement or meeting of the minds to violate constitutional rights, Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001), and that an "actual deprivation of his constitutional rights resulted from the alleged conspiracy," Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'"  Franklin, 312 F.3d at 441 (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir.1989)).  Additionally, Plaintiff must show that Defendants "conspired or acted jointly in concert and that some overt act [was] done in furtherance of the conspiracy."  Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974).  "[M]ore than vague conclusory allegations are required to state a [conspiracy] claim."  Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

1    The same analysis applies to Plaintiff's state law claims, which appear to be based on

2  the same factual allegations as his federal claims.[3]  The Court will thus recommend that the

3  unrelated state law claims be dismissed without prejudice.  To the extent his state law claims

4  are related, as discussed below, the Court will recommend that they be dismissed with

5  prejudice for failure to comply with California's Government Claims Act.

6        C.  Deliberate Indifference to Serious Medical Needs in Violation of the Eighth

7            Amendment

8    "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an

9  inmate must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d

10  1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires

11  Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a

12  prisoner's condition could result in further significant injury or the unnecessary and wanton

13  infliction of pain,'" and (2) that "the defendant's response to the need was deliberately

14  indifferent."  Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992))

15  (citation and internal quotations marks omitted), overruled on other grounds by WMX

16  Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

17    Deliberate indifference is established only where the defendant subjectively "knows of

18  and disregards an excessive risk to inmate health and safety."  Toguchi v. Chung, 391 F.3d

19  1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted).

20  Deliberate indifference can be established "by showing (a) a purposeful act or failure to

21  respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."

22  Jett, 439 F.3d at 1096 (citation omitted).  Civil recklessness (failure "to act in the face of an

23  unjustifiably high risk of harm that is either known or so obvious that it should be known") is

24  insufficient to establish an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825,

25  836-37 & n.5 (1994) (citations omitted).

26

27    _____

28    [3] Plaintiff's claim seven, which is a state law claim, includes factual allegations that are not included in
his federal claims.  However, the claim is based on different occurrences than claim one, and it is brought against
different defendants.  Thus, claim seven is also unrelated to claim one.

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).  Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.  To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

In claim one, Plaintiff alleges that defendants Talley, Gonzales, and Mata violated his Eighth Amendment rights because they failed to provide him with a new wheelchair.

Liberally construing Plaintiff's First Amended Complaint, the Court finds that Plaintiff's Eighth Amendment claim for deliberate indifference to his serious medical needs should proceed against defendants Talley, Mata, and Gonzales.  Plaintiff alleges that his "loaner" wheelchairs routinely break or need immediate maintenance.  Plaintiff also alleges that, pursuant to a CDCR 1824 and healthcare appeal, Plaintiff was supposed to be issued a new wheelchair.  However, each of these defendants repeatedly failed to provide Plaintiff with a new wheelchair, despite each of them knowing that Plaintiff medically required a new wheelchair.

Plaintiff does not appear to bring a claim against any other defendant based on his allegations that he was not provided with a new wheelchair, but to the extent that he does, the Court finds that those claims should be dismissed because Plaintiff fails to sufficiently allege that any other defendant knew that Plaintiff had a serious medical need for a new wheelchair yet failed to provide one.

### D.  Retaliation

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's

1    protected conduct, and that such action (4) chilled the inmate's exercise of his First

2    Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

3    goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

4    "'[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he

5    suffered some other harm,' <i>Brodheim</i>, 584 F.3d at 1269, that is 'more than minimal,' <i>Robinson</i>,

6    408 F.3d at 568 n.11.  That the retaliatory conduct did not chill the plaintiff from suing the

7    alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage.  <i>Id.</i> at

8    569." <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012) (alteration in original).

9    While prisoners have no freestanding right to a prison grievance process, <u>see</u> <u>Ramirez v.</u>

10   <u>Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the

11   courts hinges on his ability to access the prison grievance system," <u>Bradley v. Hall</u>, 64 F.3d

12   1276, 1279 (9th Cir. 1995), <u>overruled on other grounds by</u> <u>Shaw v. Murphy</u>, 532 U.S. 223, 230

13   n.2 (2001).  Because filing administrative grievances and initiating civil litigation are protected

14   activities, it is impermissible for prison officials to retaliate against prisoners for engaging in

15   these activities.  <u>Rhodes</u>, 408 F.3d at 567.

16   Plaintiff brings a claim against defendants G. Martinez, Gibson, Rhoads, Ramos,[4]

17   Metts, and R. Martinez for violating his rights guaranteed by the First and Fourteenth

18   Amendments to be free from retaliation for exercising his right to file grievances and

19   complaints.[5]  However, Plaintiff fails to sufficiently allege that any of these defendants

20   retaliated against him because he filed a staff complaint or otherwise engaged in protected

21   conduct.

22   Plaintiff does allege that he received a Rules Violation Report for Disrespect without

23   Potential for Violence/Disruption after he wrote a staff complaint against defendant Mata.

24   However, there is nothing that defendant Mata said or did to suggest that Rules Violation

25

26

27       [4] As to defendants Gibson, Rhoads, and Ramos, the Court is only analyzing this claim based upon the allegation that they retaliated against Plaintiff because Plaintiff filed 602s/grievances against defendant Talley and defendant Mata.

28       [5] While Plaintiff mentions the Fourteenth Amendment, Plaintiff appears to be bringing a First Amendment retaliation claim.

Report was issued in retaliation for Plaintiff filing a staff complaint.  Moreover, defendant Mata accused Plaintiff of disrespecting her before Plaintiff filed the staff complaint, and Plaintiff does not allege facts indicating that either she or defendant G. Martinez knew of the staff complaint before the Rules Violation Report was issued.

Accordingly, Plaintiff fails to state a retaliation claim.

E.  Procedural Due Process

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake.  Ingraham v. Wright, 430 U.S. 651, 672-73 (1977).

The United States Supreme Court, in a case involving a disciplinary proceeding that resulted in a punishment of thirty days in solitary confinement, held that while States may create liberty interests, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, *e.g., Vitek,* 445 U.S., at 493, 100 S.Ct., at 1263–1264 (transfer to mental hospital), and *Washington,* 494 U.S., at 221–222, 110 S.Ct., at 1036–1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 483-84 (1995).  In Sandin the Supreme Court held that neither thirty days in solitary confinement nor issuance of an RVR that could be used in parole proceedings were substantial enough deprivations of liberty interests to trigger procedural due process protections.

Plaintiff complains about the process he received during the disciplinary hearing conducted by defendant R. Martinez on the Rules Violation Report for Disrespect without Potential for Violence/Disruption that was drafted by defendant G. Martinez.  Plaintiff alleges that he was only allowed to say six words before he was shut down by defendant R. Martinez, who told Plaintiff he was finding Plaintiff guilty, without discussion.  However, Plaintiff does

15

not provide any allegations regarding what punishment, if any, he suffered.  Thus, there are no allegations suggesting that Plaintiff was subjected to an atypical and significant hardship in relation to the ordinary incidents of prison life, and Plaintiff does not sufficiently allege that he had a liberty interest at stake.  The Court noted this deficiency in its first screening order and gave Plaintiff leave to amend (ECF No. 17), but Plaintiff did not include any additional allegations regarding the consequences of being found guilty of the Rules Violation Report.

Accordingly, to the extent Plaintiff is bringing a due process claim against defendant R. Martinez (or any other defendant) based on the procedures he received at the disciplinary hearing, Plaintiff fails to state a claim.

### F.   Processing of Appeals/Grievances

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates."  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (alteration in original) (quoting Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment."  Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Plaintiff complains about the processing of the 602s/grievances he filed against defendant Talley and defendant Mata.  As Plaintiff does not have a liberty interest in the processing of his 602s/grievances, Plaintiff fails to state a claim based on his allegations that these 602s/grievances were not properly processed.[6]

\\\

\\\

---

[6] However, a failure to correctly process Plaintiff's 602s/grievance may be relevant and admissible to the extent Defendants rely on a defense of non-exhaustion.

### G.  Deprivation of Property

The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). Authorized intentional deprivation of property pursuant to an established state procedure is actionable under the Due Process Clause.  Hudson v. Palmer, 468 U.S. 517, 532 & n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985).  On the other hand, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  Hudson, 468 U.S. at 533.  And, "California law provides an adequate post-deprivation remedy for any property deprivations."  Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-95).  Additionally, "the Due Process Clause is [] not implicated by a *negligent* act of an official causing unintended loss of or injury to … property."  Daniels v. Williams, 474 U.S. 327, 328 (1986).

Plaintiff alleges that defendant Talley forwarded an Inmate Trust Account Withdrawal slip to accounting, which Plaintiff did not request or approve.  This led to funds being deducted unlawfully from Plaintiff's account.

There are no allegations suggesting that Plaintiff's property was taken pursuant to an established policy.  Instead, Plaintiff appears to allege that he suffered an unauthorized intentional deprivation of his property by a state employee.  As California law provides an adequate post-deprivation remedy, Plaintiff fails to state a cognizable claim for deprivation of his property in violation of the Fourteenth Amendment.

### H.  State Law Claims

California's Government Claims Act[7] requires that a claim against the State[8] or its

---

[7] This Act was formerly known as the California Tort Claims Act.  City of Stockton v. Superior Court, 42 Cal. 4th 730, 741-42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

employees "relating to a cause of action for death or for injury to person" be presented to the Department of General Services' Government Claims Program no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245 (Cal. 2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public entity or employee, a plaintiff must allege compliance with the Government Claims Act. Bodde, 32 Cal.4th at 1245; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

Plaintiff has not pled compliance with California's Government Claims Act. Accordingly, Plaintiff fails to state any state law claims against defendants Talley, Gonzales, Mata, G. Martinez, Gibson, Rhoads,[9] Ramos, Metts, and R. Martinez, and these claims should be dismissed with prejudice.[10]

### IV.    CONCLUSION AND RECOMMENDATIONS

The Court has screened the First Amended Complaint and finds that Plaintiff's Eighth Amendment claims against defendants Talley, Mata, and Gonzales for deliberate indifference to his serious medical needs should proceed past screening. The Court also finds that all other claims and defendants should be dismissed.

The Court will not recommend that further leave to amend be granted. In the Court's prior screening order, the Court identified the deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff with an opportunity to amend his complaint. Plaintiff filed his First Amended Complaint with the benefit of the Court's screening order. While Plaintiff cured some of the deficiencies identified by the Court, it

---

[8] "'State' means the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller." Cal. Gov't Code § 900.6.

[9] As to defendants Gibson, Rhoads, and Ramos, the Court is only analyzing the state law claims based upon the allegation that they retaliated against Plaintiff because Plaintiff filed 602s/grievances against defendant Talley and defendant Mata.

[10] If Plaintiff believes he complied with this Act despite not pleading facts about compliance, Plaintiff may include that information in his objections to these findings and recommendations.

appears that further leave to amend would be futile.

Accordingly, based on the foregoing, the Court HEREBY RECOMMENDS that:

1. This case proceed on Plaintiff's Eighth Amendment claims against defendants Talley, Mata, and Gonzales for deliberate indifference to his serious medical needs;

2. To the extent Plaintiff brings Eighth Amendment deliberate indifference claims against any other defendant based on allegations that he was not provided with a new wheelchair, these claims be dismissed, with prejudice;

3. Plaintiff's First Amendment Retaliation claim against defendants G. Martinez, Gibson, Rhoads, Ramos, Metts, R. Martinez, and Mata based on allegations that they retaliated against Plaintiff because Plaintiff filed 602s/grievances against defendants Talley and Mata be dismissed, with prejudice;

4. Plaintiff's Fourteenth Amendment claim based on allegations that Plaintiff did not receive due process during the disciplinary hearing conducted by defendant R. Martinez on the Rules Violation Report for Disrespect without Potential for Violence/Disruption that was drafted by defendant G. Martinez be dismissed, with prejudice;

5. Plaintiff's claims based on the processing of the 602s/grievances that he filed against defendants Talley and Mata be dismissed, with prejudice;

6. Plaintiff's claim against defendant Talley based on allegations that funds were unlawfully deducted from his account be dismissed, with prejudice;

7. Plaintiff's second, third, fourth, and fifth claims be dismissed, without prejudice, as unrelated;

8. Claim six be dismissed, with prejudice, to the extent it is based on: Plaintiff's allegations that he was not provided with a new wheelchair; Plaintiff's allegations that he was retaliated against because he filed 602s/grievances against defendants Talley and Mata; Plaintiff's allegations that he did not receive due process during the disciplinary hearing conducted by defendant R.

Martinez on the Rules Violation Report for Disrespect without Potential for Violence/Disruption that was drafted by defendant G. Martinez; Plaintiff's allegations that the 602s/grievances that he filed against defendants Talley and Mata were not properly processed; and Plaintiff's allegations that defendant Talley caused funds to be deducted unlawfully from his account;

9. Claim six be dismissed, without prejudice, as unrelated, to the extent it is based on any other conduct;

10. Plaintiff's state law claims against defendants Talley, Gonzales, Mata, G. Martinez, Metts, and R. Martinez be dismissed, with prejudice;

11. Plaintiff's state law claims against defendants Gibson, Rhoads, and Ramos be dismissed, with prejudice, to the extent the claims are based on the allegation that they retaliated against Plaintiff because Plaintiff filed 602s/grievances against defendants Talley and defendant Mata; and

12. All other state law claims be dismissed, without prejudice, as unrelated;

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 6, 2022**        /s/ Erica P. Grosjean
                                      UNITED STATES MAGISTRATE JUDGE